UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA R. O/B/O N.L.O.R.,[1]

                        Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION AND ORDER

6:22-CV-06541 (CJS)

## INTRODUCTION

Brenda R. brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on behalf of her teenage daughter, N.L.O.R. ("Plaintiff").   The Commissioner found that the child had several severe impairments, but that they, either by themselves or in combination, did not functionally equal a listed impairment.   Plaintiff maintains that determination is erroneous and unsupported by substantial evidence.   Now before the Court are Plaintiff's motion for judgment on the pleadings (ECF No. 11) and Defendant's cross-motion (ECF No. 12) for the same relief.   Plaintiff's motion is granted, Defendant's cross-motion is denied, and this matter is remanded to the Commissioner for further administrative proceedings.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

STANDARDS OF LAW

Pursuant to 42 U.S.C. § 1382c(a)(3)(C)(i), "[a]n individual under the age of 18 [i.e., a "child"] shall be considered disabled for the purposes of [SSI benefits] if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The Commissioner has established a three-step process for evaluating whether a child is disabled. First, the Commissioner must find the child not disabled if he or she is performing "substantial gainful activity."   20 C.F.R. § 416.924(a).

Next, provided the child is not performing substantial gainful activity, the Commissioner must evaluate whether or not the child has "severe" mental and/or physical impairments. *Id*. If the child has a severe impairment(s), the Commissioner must then determine whether the impairment meets the durational requirement, and meets or medically equals the severity of an impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, or if it functionally equals the listings. 20 C.F.R. § 416.924(d).

If the severe impairment does not meet or medically equal a listing, the Commissioner employs the "whole child" approach outlined in 20 C.F.R. § 416.926a(a) to determine functional equivalence. Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach, SSR 09-1P, 2009 WL 396031, at *2 (S.S.A. Feb. 17, 2009). "'Functioning' refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and

2

doing class assignments." Hence, when making a finding regarding functional equivalence, the Commissioner focuses first on the child's activities, and evaluates how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments. *See, e.g.*, Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Acquiring & Using Information", SSR 09-3P, at *1 (S.S.A. Feb. 17, 2009) (citing 20 CFR 416.926a(b) and (c)). The Commissioner then evaluates the effects of a child's impairment(s) by rating the degree to which the impairment(s) limits functioning in six "domains." *Id*. The six domains of functioning are: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

To functionally equal the listings, an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain when his impairment(s) interfere seriously with his ability to independently initiate, sustain, or complete one or more activities. 20 C.F.R. § 416.926a(e)(2). A child has an "extreme" limitation in a domain when his impairment(s) interfere very seriously with his ability to independently initiate, sustain, or complete one or more activities. 20 C.F.R. § 416.926a(e)(3).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial

evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of

whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d.Cir.1984)).

## BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the ALJ's decision and the parties' papers.

On November 2, 2021, the ALJ issued a decision denying the adolescent Plaintiff's claim for SSI benefits. Tr. 21-28.   The ALJ found, in pertinent part, that Plaintiff had severe impairments of attention deficit hyperactivity disorder ("ADHD"), severe expressive and receptive language delay, and history of cleft palate (corrected with surgery); that those impairments did not meet or medically equal the severity of a listed impairment; and that those impairments also did not functionally equal a listed impairment, since Plaintiff did not have a severe limitation in one of the six domains of functioning or marked limitations in two of those domains.   More specifically, the ALJ found that Plaintiff had a marked impairment in the domain of acquiring and using

6

information; less than a marked limitation in the domains of attending and completing tasks, interacting and relating with others, and caring for herself; and no limitation in the domains of moving about/manipulating objects and health/physical well-being.

As discussed further below, the dispute in this action is over the three domains of functioning in which the ALJ found that Plaintiff had some, but less-than-marked, limitations.   In that regard, the ALJ generally indicated that while Plaintiff had a marked limitation in acquiring and using information, due primarily to "intellectual delays and low working memory," "the medical and educational evidence of record indicates that [her] basic cognitive, social, and adaptive functioning is generally intact." Tr. 25.   Essentially, the ALJ concluded that Plaintiff's ADHD was well-controlled with medication, and that her "intellectual delays and low working memory" primarily affected her ability to learn and perform academically but did not significantly affect her functioning in other areas.

In support of that determination, the ALJ emphasized, for example, a report from consultative psychologist Christine Ransom, Ph.D. ("Ransom"), stating:

> In October 2020, the claimant presented to Dr. Christine Ransom, Ph.D., for a psychiatric evaluation.  . . .  [Dr. Ransom] reviewed the claimant's counseling history and noted that she had stopped counseling and was currently only taking medication for treatment of ADHD.  [The claimant's mother] reported that the claimant's ADHD medication was effective with signs and symptoms currently in remission.   She stated that the claimant can focus well, stay still, and complete assignments at school.   On mental status examination, the claimant was cooperative and socially appropriate. Her though process was coherent and goal directed with no hallucination, delusions, or paranoia.   The claimant's memory, concentration, and attention were intact.   [Ransom] assessed the claimant with low average cognitive functioning with a full scale IQ of 84 o[n] a test of nonverbal intelligence, and the claimant's insight and judgment were age appropriate. Finally, Dr. Ransom recorded a wide range of age-appropriate activities of daily living including dressing, bathing, grooming, spending time with

friends, working on a computer, drawing, and playing with a variety of
games and toys.    Dr. [Ransom's] report describes stable cognitive
functioning with treatment.    The claimant's intact mental status with
treatment for ADHD, appropriate behavior, and age-appropriate activities
support less than marked limitations in the relevant domains.

Tr. 26.   The ALJ further noted that, in the "medical source statement" section of her

report, Ransom

opined that the claimant has no limitations in attending to, following, or
understanding age-appropriate directions; sustaining concentration and
completing age-appropriate tasks; adequately maintaining appropriate
social behavior; responding appropriately to changes in the environment;
learning in accordance to cognitive functioning; asking questions and
requesting assistance in an age-appropriate manner; being aware of
danger and taking needed precautions; and interacting adequately with
peers and adults.

Tr. 27.   The ALJ found Ransom's opinion "mostly persuasive" and "generally consistent

with the medical evidence," though he indicated that, notwithstanding such opinion, other

evidence supported a finding of marked limitation in the domain of acquiring and using

information. Tr. 27.

The ALJ also discussed testing results obtained by speech and language

pathologist Elizabeth Mobley, SLP ("Mobley").   Mobley had indicated that Plaintiff had a

history of cleft palate that had been successfully repaired when she was a baby, and that

her "oral motor structure revealed normal structure and functioning for speech and eating

purposes." Tr. 26.    The ALJ further stated, however, that according to Mobley,

"[l]anguage testing revealed a severe delay in both receptive and expressive language

skills," and that Plaintiff "had difficulty following multistep directions without cueing and

repetition and had difficulty formulating compound and complex sentences with age-

appropriate expressive vocabulary." Tr. 26.    The ALJ stated that Mobley's medical source statement was persuasive and supported a finding of marked limitation in the domain of acquiring and using information, but that, "because [Plaintiff's] conversational communication [wa]s generally intact, her language delays merely support[ed] a finding of a less than marked limitation in interacting and relating with others." Tr. 26.

Additionally, the ALJ discussed Plaintiff's educational records, including "[u]pdated intellectual function testing" showing "scores in the very low range," and an individualized education plan ("IEP") describing how Plaintiff had experienced specific enumerated "difficulties adapting to remote instruction" during the Covid-19 lockdown. Tr. 26 ("She did not regularly attend class or complete her work, and she was obtaining a grade of F in all of her classes.    The claimant did not participate sufficiently with speech and language services during telehealth.").    The ALJ found, however, that such evidence did not require a finding of a marked impairment in the functional domains of attending and completing tasks or interacting and relating with others, stating, in pertinent part:

> The Covid-19 Pandemic and remote instruction were unusual stressors that did not represent the claimant's baseline capabilities in a normal environment.    The claimant's IEP indicated that the claimant's school attendance was perfect before the pandemic, and she was improving in previous live speech and language therapy.    The claimant is also described as respectful to teachers and peers despite her discomfort in the online group environment.    She can answer content questions with good insight on a one-to-one basis.

Tr. 26.

The ALJ further discussed the then-most-recent evidence of Plaintiff's functioning, consisting of an assessment from school social worker Jessica Morillo, LCSW-R ("Morillo").    Morillo reported that Plaintiff spent a lot of time in her room at home but had

good relationships with her family members, was "well-behaved but disengaged academically and failing several classes," had speech issues that made her nervous when talking in classroom and social settings, and had anxiety at school related to a history of being bullied by peers. Tr. 27.   Morillo recommended that Plaintiff have weekly counseling in a group setting to improve her social and personal development.   The ALJ found that Morillo's assessment indicated less-than-marked limitations in the domains of interacting and relating with others and caring for herself, stating:

> [Morillo's report] does not describe substantial difficulties in appropriate behavior and emotional control.   It also does not describe developmentally regressive behavior or safety concerns.   The claimant maintains a good relationship with her family and participates in family activities despite some isolation.     Therefore, Ms. Morillo's report and recommendations for counseling supports [a finding of] a less than marked limitation in interacting and relating with others and caring for herself.

Tr. 27.

Finally, the ALJ discussed prior administrative findings which had concluded that Plaintiff had a marked limitation in the domain of acquiring and using information, less-than-marked limitations in the domains of attending and completing tasks, interacting and relating with others, and caring for herself, and no limitation in the domains of moving about and manipulating objects and health/physical well-being. Tr. 28.   The ALJ found those opinions persuasive, stating:

> The are supported by a review of the available evidence including the intellectual test results and speech language reports, the counseling notes, and the pediatric treatment records.   They are consistent with the evidence received at the hearing level including Ms. Morillo's report describing [a] need for counseling but generally age-appropriate personal functioning.

Tr. 28.   Indeed, the ALJ's finding as to functional equivalence mirrors the prior

10

administrative findings.

In this action, Plaintiff maintains that the ALJ's decision must be reversed since his "functional equivalence findings were unsupported by substantial evidence and lack any meaningful explanation [for why he found that] Plaintiff only had less than marked limitations in multiple domains."[2]  Plaintiff also contends that the decision is erroneous and inconsistent insofar as it finds that Plaintiff had a marked impairment in the domain of "acquiring and using information" but not in other domains, since "a marked limitation in the domain of acquiring and using information similarly supports marked limitations in multiple other domains."[3]

Plaintiff generally maintains that the ALJ's "bullet point findings" "fail[ ] to provide the requisite explanation" required by the Commissioner's regulations, leaving the ALJ's decision "unamenable to meaningful review by [the] Court."[4]  In particular, Plaintiff argues that "[t]here is inadequate explanation for how the ALJ determined that [she] had less than marked limitations" in the domains of attending and completing tasks, interacting and relating with others, and caring for herself, due to the fact that "the ALJ failed to construct an accurate and logical bridge between his recitation of the facts and the conclusions her reached."[5]

Plaintiff then describes more specifically the alleged errors committed by the ALJ concerning the three domains of functioning in which he found that she had "less than marked limitations."   First, with regard to the domain of attending and completing tasks,

---

[2]  Pl. Memo of Law, ECF No. 11-1 at p. 1.
[3]  Pl. Memo of Law, ECF No. 11-1 at p. 1.
[4]  Pl. Memo of Law, ECF No. 11-1 at p. 11.
[5]  Pl. Memo of Law, ECF No. 11-1 at p. 12.

Plaintiff contends that the ALJ's decision "overlooked a vast amount of evidence," such as testing scores two standard deviations below the mean, and school records showing that Plaintiff received extensive supports through her school individualized education plan ("IEP"); was inconsistent in purporting to find the opinion of Mobley persuasive but then making a finding that did not flow logically from her findings; drew improper inferences from the fact that Plaintiff performed better in some settings than she did overall; failed to consider how Plaintiff's ADHD affected her ability to complete tasks; and erred by finding that someone who cannot complete tasks without special education services and supports has "less than marked" limitations in this domain.

Regarding the domain of interacting and relating with others, Plaintiff alleges that the ALJ's decision failed to consider the Commissioner's guidance indicating that persons with marked limitations in the domain of acquiring and using information also often have a marked impairment in this domain; failed to consider the significance of education records and testing scores two standard deviations below the mean; and failed to consider that Plaintiff's ability in this domain was very limited even with extensive supports, services, and accommodations.

And, finally, regarding the domain of caring for herself, Plaintiff contends that the ALJ's decision "failed to address" evidence supporting a finding of marked limitations; failed to discuss test scores relating to Plaintiff's ability to care for herself, such as the Vineland Test score, making it unclear whether he considered them; and failed to acknowledge evidence showing the extent of Plaintiff's difficulties with adaptive behavior, hygiene, self-care, grooming, following rules, dealing with social anxiety, and addressing her feelings appropriately.

Plaintiff does not challenge other aspects of the ALJ's decision, namely the finding identifying her severe impairments; the finding that those impairments do not meet or medically equal a listed impairment; the finding that she has a marked impairment in the domain of acquiring and using information; and the finding that she has no limitation in the domains of moving about and manipulating objects and physical well-being.

Defendant disagrees with Plaintiff's arguments and insists that the ALJ's decision is free from error and supported by substantial evidence.   Defendant generally contends that the ALJ adequately explained his ruling and that Plaintiff's arguments amount to an improper request for the Court to re-weight the evidence.

The Court has considered the parties' submissions, including Plaintiff's reply, and the entire administrative record.

DISCUSSION

Plaintiff essentially maintains that the ALJ properly found that she had marked limitations in the domain of acquiring and using information, and that the same evidence supporting that finding should have caused the ALJ to also find that she had marked impairments in three other domains:

> Plaintiff [agrees that she has] a marked limitation in the domain of acquiring and using information.   However, Plaintiff's marked limitation[ in that domain was] the result of both *cognitive and speech/language deficits*, and her impairments caused marked limitation in multiple domains. Specifically, her impairments supported a marked limitation [finding] in the domains of: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) caring for self.   . . .   Plaintiff met [her] burden of proving marked limitations in at least 2 domains, and remand is required.

Pl. Memo of Law, ECF No. 11-1 at p. 11 (emphasis added).   Plaintiff alleges that the ALJ

erred, by ignoring evidence of her "cognitive and speech/language deficits," and by failing to provide an adequate explanation for his findings concerning functional equivalence.

Preliminarily, the Court notes that Plaintiff's papers repeatedly argue that she is entitled to prevail, since there is substantial evidence to prove that she has marked limitations in at least two domains. *See, e.g.*, Pl. Memo of Law at p. 11 ("Plaintiff met [her] burden of proving marked limitations in at least 2 domains, and remand is required."). However, that is a misstatement of the relevant standard, since the fact that there may be substantial evidence to support a claimant's position does not mean that she is entitled to benefits.   Rather, the issue for the Court is whether there is substantial evidence supporting the ALJ's findings, and if so, the claimant loses even if there is also substantial evidence supporting her position. *See, e.g., Cleophus B. v. O'Malley*, No. 21-CV-1223F, 2024 WL 1067474, at *4 (W.D.N.Y. Mar. 12, 2024) ("[T]he issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original)."); *see also, Tyler J. obo R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-899-DB, 2024 WL 475067, at *15 (W.D.N.Y. Feb. 7, 2024) ("[T]he question is not whether there is evidence to support disability; it is whether there is 'more than a scintilla' of evidence supporting the ALJ's decision.") (citation omitted).   Consequently, to the extent Plaintiff argues that she is entitled to prevail because there is substantial evidence supporting marked limitations in at least two domains, her argument lacks merit.

The Court also finds no merit to Plaintiff's contention that the ALJ erred by making only "bullet-pointed domain findings" with "literally no attendant explanation." *See*, Pl. Memo of Law, ECF No. 11-1 at p. 12 ("The ALJ's bullet-pointed domain findings obviously

14

provide no substantial evidence supporting them.   There is no way to meaningfully review domain findings that have literally no attendant explanation – an no explanation can be found throughout the rest of the decision.").   Plaintiff's characterization in this regard is simply not true.   Rather, the ALJ first listed his findings concerning the six domains of functioning in bullet-point format, and then provided five pages of explanation. Tr. 24-28.   For example, at Tr. 25, the ALJ reviewed various pieces of evidence and concluded: "The claimant's ability to improve in behavioral, adaptive, and personal functioning with treatment support the assessments of less than marked limitations in those domains.   The claimant's intact basic cognitive status and the limitation of [ADHD] medication to the school year support an assessment of a less than marked limitation in attending and completing tasks."   Consequently, it is not correct to say that the ALJ provided "literally no attendant explanation" for his bullet-point findings.

Otherwise, though, the Court agrees with Plaintiff that the ALJ's decision contains errors that require remand.   In that regard, even assuming *arguendo* that there is substantial evidence (more than a scintilla) supporting the ALJ's findings concerning functional equivalence, as Defendant maintains, the Court cannot simply affirm on that basis if the ALJ committed significant, non-harmless errors in applying the relevant legal standards. *See, Pollard v. Halter*, 377 F.3d at 189 ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

The Court agrees with Plaintiff that "the ALJ['s decision] failed to construct an

15

accurate and logical bridge between his recitation of the facts and the conclusions he reached"; seemingly overlooked evidence; failed to note the significance of testing scores two standard deviations below the mean; was inconsistent in purporting to find the opinion of Mobley persuasive but then making a finding that did not flow logically from her findings; drew improper inferences from the fact that Plaintiff performed better in some settings (such as during Ransom's evaluation) than she did overall; failed to explain why the Commissioner's admonition, that persons with marked limitations in the domain of acquiring and using information also often have a marked impairment in interacting and relating with others, did not apply here; and failed to acknowledge evidence showing the extent of Plaintiff's difficulties with adaptive behavior, hygiene, self-care, grooming, following rules, and dealing with social anxiety.

In general, the ALJ's decision fails to persuasively explain how its conclusions are consistent with the record.   It is undisputed that Plaintiff has a very serious learning disability, involving very low IQ scores,[6] and delays in speech and language functioning which the ALJ designated as a "severe expressive and receptive language delay."[7]   As a result, Plaintiff has essentially made little-if-any academic progress throughout her life. Educational records indicate that she has IQ scores in the range of 70; she was required to repeat the first and second grades while still living in Puerto Rico; and even today, as a fifteen-year-old adolescent, her academic achievement has not progressed past the first or second grade level. *See*, 2021 IEP, Tr. 457-458 ("[She has F in all her classes.   .

---

[6] *See, e.g.*, Tr. 455 (2021 IEP: "Currently, [she] obtained on the WISC-V Spanish a Full Scale IQ of 70, which falls within the Very Low range.").

[7] Notably, Dr. Ransom did not evaluate Plaintiff's "expressive and receptive language skills" since Plaintiff only speaks Spanish. Tr. 437.

. . Full Scale IQ . . . falls within the Very Low range.  . . .  [She] is performing at a 1st-grade level in reading[.]  . . .  [She] is performing at a 2nd grade level in mathematics, well below grade level expectation."); Tr. 426 ("She has been unable to write complete sentences.").  Indeed, a comment by the school district that Plaintiff "is working well below grade level in all academic content" strikes the Court as a vast understatement. Tr. 458.[8]

Similarly, standardized test scores show Plaintiff scoring in only the first and second percentiles for math, reading, and language skills. Tr. 423 ("The Core Language Score of the CELF-4, Spanish Edition, indicates that [her] overall level of language functioning is severely delayed.   Her other language quotient scores fall consistently at the standard score levels of 70-71 (with percentile ranks of 2), indicating moderate to severe delays."); *see also, id.* ([NWEA] Test Results: Math 153 (RIT) 1 (percentile); Reading 152 (RIT), 1 (percentile).").

In addition to these academic problems, Plaintiff's educational records contain multiple references to her having problems with communicating, interacting with others, and caring for herself. For example, the report of the school social worker, Ms. Morillo, reports that Plaintiff is well-behaved at school and generally has good relationships with everyone, including family members, teachers, and peers, but that she nevertheless has serious problems interacting with others and caring for herself:

> Teacher states that [she] is well-behaved in school but disengaged academically and is failing several classes.   Teacher also reports concerns

---

[8] Despite her dismal academic performance, the educational records at times sound positive.   For example, Plaintiff's 2017 IEP observed that she was "progressing satisfactorily on all her IEP goals," and that, "she has made great progress with her decoding skills and being able to read 2nd grade text." Tr. 422.   Although, four years later, her IEP noted that she was still reading at the 1st grade level.

for [her] hygiene, self-care and grooming, in addition to concern for her social skills as [she] seems disconnected with teacher and peers consistently through all classes.   Teacher believes that [she] has a speech issue which makes her nervous to talk in class, which is affecting her academic and social engagement.   She also refuses to wear her glasses, which makes it difficult for her to comprehend material.   [Her] mom states that she has suffered bullying in the past and this has caused some school-based anxiety and emotional distress.   [Her] anxiety about school and apprehension of negative social interactions makes her reluctant to engage[.]   . . .   [She] has many strengths including helpfulness, good family relationships and interest in working to improve academically.   [She] has a history of social conflict in school and this has resulted in her often disengaging from or not attending class.   She has trouble focusing and is hesitant to talk in class either to teachers or peers due to anxiety.   Teacher noted additional concerns about [her] self-care abilities and that she might need help to complete her basic activities of daily living.

Tr. 557.   The testimony of Plaintiff's mother at the hearing was essentially consistent with what Ms. Morillo wrote. Tr. 24.

However, the ALJ found the mother's testimony "not entirely consistent" with the record. Tr. 24.   In that regard, the ALJ essentially found that the evidence, including "objective testing," showed that Plaintiff's speech and language delays primarily affected her only in the academic setting, and therefore supported a finding of a marked limitation in the domain of acquiring and using information, but not in the other domains.   Indeed, the ALJ stated that the evidence overall indicated that Plaintiff's "basic cognitive, social, and adaptive functioning" was "generally intact." Tr. 25.   Specifically with regard to the domain of attending and completing tasks, the ALJ stated that the record generally showed that Plaintiff's ADHD was stable with medication and that she demonstrated "improve[ment] in behavioral, adaptive, and personal functioning." Tr. 25.   With regard to the domain of interacting and relating with others, the ALJ found that Plaintiff's

"conversational communication [was] generally intact," purportedly based primarily on the reports of Ransom and Mobley.   The ALJ acknowledged Morillo's assessment that Plaintiff's "speech issues" affected her both academically and socially, but seemingly gave little credence to that opinion, stating:

> Morillo's report indicates that [Plaintiff] needs treatment for improvement in her social and personal development.   However, it does not describe developmentally regressive behavior or safety concerns.   The claimant maintains a good relationship with her family and participates in family activities despite some isolation.   Therefore, Ms. Morillo's report . . . supports an assessment of less than marked limitations in interacting and relating with others.

Tr. 27.   Finally, with regard to the domain of caring for herself, the ALJ again referenced Morillo's report, describing it as having "noted some additional concerns related to [Plaintiff's]   personal hygiene and anxiety in the context of a history of bullying," but finding that it did not support a marked finding in the domain of caring for oneself, purportedly since it "d[id] not describe developmentally regressive behavior or safety concerns." Tr. 27.   The ALJ alternately characterized Morillo's report as having described a "need for counseling but generally age-appropriate personal functioning," which the ALJ found was consistent with the opinions of the agency review physicians who found that Plaintiff had a marked limitation only in the domain of acquiring and using information.

Having considered the entire record, the Court agrees with Plaintiff that the ALJ's decision does not give proper consideration to all the evidence and does not flow logically from the evidence upon which it purports to rest.   The decision appears to cherry-pick evidence supporting a finding mirroring that of the agency review physicians, while failing to discuss a significant amount of contrary evidence indicating that Plaintiff's speech and

cognitive impairments caused serious problems in domains of functioning other than just the domain of acquiring and using information.

For example, the decision largely dismisses, without adequate explanation, the observations of Plaintiff's mother and Ms. Morillo, who were presumably in the best positions of anyone to assess Plaintiff's functioning, even though their statements were generally in accord with the academic records.   Such error was not harmless, since such evidence indicates that Plaintiff had much more difficulty in the relevant domains (attending and completing tasks, interacting and relating with others, and caring for herself) than the ALJ found.   On the other hand, the ALJ credited the mother's testimony insofar as it supported his functional equivalence findings by indicating that Plaintiff's ADHD medication was effective.

The ALJ also failed to discuss the significance of Plaintiff's standardized test results that were two standard deviations below the mean. *See, Miles ex rel. J.M. v. Astrue*, 502 F. App'x 59, 61 (2d Cir. 2012) ("20 C.F.R. § 416.926a(e)(2)(iii) . . . provides that a child *will be found to have a "'marked' limitation* when [the child has] a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain," *and* if the child's "day-to-day functioning in domain-related activities is consistent with that score." *Id.*") (emphasis added).   Instead, the ALJ only vaguely alluded to such results, such as by noting that "objective testing describe[d] significant delays in academic development and language," and that "language testing revealed a severe delay in both receptive and expressive language skills." Tr. 25, 26.

The ALJ's discussion of the opinion evidence also seems result-driven and

inconsistent.   For example, Ransom's opinion, resulting from a one-time examination through an interpreter, asserts that Plaintiff had *no* functional limitations or cognitive deficits, which is inconsistent with the record as a whole and with the ALJ's finding that Plaintiff had marked impairments in acquiring and using information.   Despite that, the ALJ found that Ransom's opinion was "mostly persuasive" and consistent insofar as it supported a finding that Plaintiff did not have marked impairments in five of the six domains of functioning, but *not* persuasive only insofar as it was inconsistent with the ALJ's finding of a marked limitation in the domain of acquiring and using information.

The ALJ's decision, though, does not acknowledge or attempt to resolve the apparent inconsistency between Ransom's opinion and the academic record generally. For example, the decision does not explain how it considered the discrepancy between Ransom's finding that Plaintiff had an IQ of 84, in "the low average range," and the finding of school officials that Plaintiff had an IQ of 70, in "the Very Low range." Tr. 441, 455.[9] The decision also does not explore the inconsistency between Ransom's opinion that Plaintiff would have "no limitation" "attending to, following, and understanding age-appropriate directions," and Mobley's observation, consistent with the academic records, that Plaintiff had difficulty following even simple instructions without constant cueing and repetition. Tr. 449 ("[She can] follow simple directions with repetition and extra cueing.   .  .   She was observed to have difficulty following multistep directions as well as simple directions without the use of cueing and repetition.").

Consequently, the matter is remanded to the Commissioner for further

---

[9] The ALJ's decision vaguely notes only that "[u]pdated intellectual function testing" showing "scores in the very low range," without acknowledging the actual score or the inconsistency between the finding and Ransom's finding.

administrative proceedings consistent with this Decision and Order.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 11) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 12) for the same relief is denied, the administrative decision is vacated, and the matter is remanded to the Commissioner for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

DATED:      March 29, 2024
            Rochester, New York

HON. CHARLES J. SIRAGUSA
United States District Judge